<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                       :
GREGORY P. MAPLES, JR.,                :
                                       :          Civil Action No. 12-933 (BRM)
             Petitioner,               :
                                       :
       v.                              :          **OPINION**
                                       :
CHARLIE WARREN,                        :
                                       :
             Respondent.               :
_____:


**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

(Dkt. No. 1) submitted by Petitioner Gregory P. Maples, Jr. ("Petitioner"), a prisoner currently

confined at East Jersey State Prison in Rahway, New Jersey. (Dkt. No. 1.) For the reasons stated

herein, the Petition is **DENIED**.[1]

_____

[1] To the extent that Petitioner's claims are unexhausted, the Court denies them on the merits pursuant to 28 U.S.C. § 2254(b)(2). 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see Carrascosa v. McGuire*, 520 F.3d 249, 255 n.10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . . Denying an unexhausted claim on the merits is consistent with the statute."); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here.").

# I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[2] will recount salient portions of the recitation of facts as set forth by New Jersey Superior Court, Appellate Division:

> The evidence would support a finding that on April 28, 2002, defendant, drove the victim, Rashon Roy, to the parking lot of an apartment complex. After defendant exited the car, another passenger, Renato Santos, got out of the vehicle and shot Roy multiple times. Witness testimony established that on April 25, 2002, defendant had accused the victim of trying to have him killed while he was in Philadelphia with his young son.  Defendant was also involved in an incident during the early morning hours of April 26, in which another co-defendant held a gun to Roy's head and only desisted from shooting him after defendant ordered him not to. On this occasion also, defendant had asked Roy "why every time I go somewheres I feel like my life being threatened?" There was also testimony that on the morning of the murder defendant discussed with co-defendants his belief that Roy had tried to have him killed in Philadelphia, and that Roy was trying to take over defendant's enterprise after defendant had "put [Roy] on his feet."

*State v. Maples*, No. A-6934-03T1 (N.J. Super. Ct. App. Div. 2005).

A jury convicted Petitioner of first-degree murder, N.J.S.A. 2C:11-3, and conspiracy to commit murder, N.J.S.A. 2C:5-2A(1). *State v. Maples*, No. A-6934-03T1. After merging the conspiracy count into the murder count, the court sentenced Petitioner to thirty years in prison with thirty years of parole ineligibility. *Id.* Petitioner appealed and the Appellate Division affirmed his

---

[2]  Pursuant to 28 U.S.C. § 2254(e)(1): "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

conviction and sentence. *Id.* The New Jersey Supreme Court subsequently denied his petition for certification. *State v. Maples*, 884 A.2d 1265 (N.J. 2005). Petitioner filed a petition for post-conviction relief ("PCR") on April 20, 2006, which was denied by the PCR court and affirmed by the Appellate Division. *State v. Maples*, No. A-5227-06T4, 2009 WL 901843 (N.J. Super. Ct. App. Div. Apr. 6, 2009). The petition for certification was denied by the New Jersey Supreme Court on June 3, 2009. *State v. Maples*, 973 A.2d 945 (N.J. 2009). Petitioner filed his second PCR petition on July 14, 2009, and on August 4, 2009, the PCR judge issued a written decision denying the petition as barred by New Jersey Court Rule 3:22–4 because the issues presented could have been raised in his first PCR petition. *State v. Maples*, No. 02-09-1247 (N.J. Super. Ct. Law Div. 2009). The Appellate Division affirmed, *State v. Maples*, A-1296-09T4, 2011 WL 2749682 (N.J. Super. Ct. App. Div. July 18, 2011) and the New Jersey Supreme Court denied certification, *State v. Maples*, 35 A.3d 680 (N.J. 2012).

On February 16, 2012,[3] Petitioner filed the instant habeas petition. (Dkt. No. 1.) He raises the following twenty-six grounds for relief with supporting facts:

> Ground 1: Trial court denied Petitioner his constitutional right to a fair trial when it admitted extremely prejudicial evidence without balancing the admissibility of the evidence.

---

[3] The case was terminated on February 21, 2012 for Petitioner's failure to submit an IFP application or filing fee. On March 9, 2012, the case was reopened upon receipt of the filing fee. On March 28, 2012, Petitioner notified the Court that he elected to have his petition decided on the merits as filed, rather than withdrawing his petition and filing an all-inclusive § 2254 petition pursuant to 28 U.S.C. § 2244(d). (*See* Dkt. Nos. 5, 6.) On April 16, 2012, an Order was entered directing Petitioner to show cause as to why the petition should not be dismissed as time barred under 28 U.S.C. § 2244(d). (Dkt. No. 8.) On October 9, 2012, the Court found Petitioner's filings to be timely and ordered Respondents to file an answer. (Dkt. No. 10.) Respondent's Answer was filed on January 7, 2013, prompting a series of filings from January to September 2013 regarding the timeliness of the petition. (*See* Dkt. Nos. 16-20.) On March 10, 2015, the case was reassigned from the Honorable Joel A. Pisano, U.S.D.J. to the Honorable Peter G. Sheridan, U.S.D.J., who requested transcripts of the *State v. Maples* trial. Transcripts were filed on May 18, 2016, and the case was transferred to the undersigned on August 8, 2016.

Supporting facts: Trial court incorrectly determined that guns pulled out on victim was not a prior bad act or uncharged crime. The state-ment [sic] has no based of fact and was prejudicial in trial[.]

Ground 2: [Petitioner] was denied his constitutional right to a fair trial when the court permitted the state to present evidence indirectly that the crime was over drugs.

Supporting facts: The [Petitioner] was not on trial for drugs and he does not have a [sic] enterprise or business. And no evidence of anyone "taking over what defendants doing or business." [sic] "Quote from prosecutor" [sic]

Ground 3: Trial court erred when it denied [Petitioner's] motion for acquittal.

Supporting facts: No evidence links defendant to crime.

Ground 4: Trial court denied [Petitioner] his constitutional right to confront witness [sic] against him when denied his ability to question the state's witness[.]

Supporting facts: The Judge limited questions to state witnesses, not given [sic] the defense the opportunity to present his defense and the ability to make there [sic] case.

Ground 5: Petitioner is entitled to post conviction relief because his Trial and Appellate attorney rendered ineffective assistance of counsel.[4]

Supporting facts: During trial, and on appeal, [Petitioner's] attorneys rendered ineffective assistance of counsel. As a result of the incompetent legal services that petitioner received, he was unjustly convicted, sentenced, and denied appellate relief. Therefore, Petitioner should be entitled to post-conviction relief.

Ground 6: Petitioner's Trial attorney rendered ineffective assistance of counsel by failing to object to prejudicial remarks by the prosecution in opening statement.

Supporting facts: And he the [sic] prosecutor said [Petitioner] who is kind of the head guy in this thing, thought that the victim was trying to move him out and take over his business.

Ground 7: Counsel failed to object to the prosecution indirectly referencing [Petitioner] and the victim being involved in illegal drug

---

[4] This claim appears to be a "catch-all" of the claims that follow it, and is therefore dismissed as duplicative.

4

trafficking;

Supporting facts: The prosecutor said the defendant and victim did business together. And that they were involved in a business venture.

Ground 8: Counsel failed to object to the prosecution stating what Petitioner was thinking.

[]Supporting facts: The prosecutor said that the Petitioner thought the victim tryed[sic] to kill him. Thereby, [sic] implying a false motive.

Ground 9: [Trial] counsel failed to object to the prosecution referencing a prior uncharged bad act in opening statement.

Supporting facts: In opening statements, the prosecutor also stated that "The evidence you are going to hear, starting with Thursday April 25th of 2000 Maples threatened the victim saying "[sic]I'm going to kill you."[sic] Petitioner was not charged with terroristic threats. Combined, the states [sic] entire opening statements was [sic] filled with improper commentary.

Ground 10: Petitioner's Trial attorney rendered ineffective assistance by describing [Petitioner] as a fearful man in his opening statements.

Supporting facts: The references by the prosecutor were very prejudicial. So instead of counsel correcting the image the jury probably had of his client, counsel says that [Petitioner] is a fearful man, who terrorizes people.

Ground 11: Petitioner's attorney rendered ineffective assistance by referencing the trial as a "show".

Supporting facts: Counsel said, "So I know you are going to have to listen to five lawyers. And that may be a fate worse than death . . . I'm going to ask you to sit back and enjoy the show . . ."

Ground 12: Petitioner's trial attorney rendered ineffective assistance by failing to obtain a plea agreement on [Petitioner's] behalf.

[no separate supporting facts stated]

Ground 13: Petitioner's attorney rendered ineffective assistance of counsel by failing to argue that the warrant for [Petitioner's] arrest was defective.

[]Supporting facts: Petitioner argues that his attorney never motioned to have his arrest warrant, and subsequent indictment, dismissed based on lack of probable cause.

5

Ground 14: Petitioner's trial attorney rendered ineffective assistance of counsel by failing to have the co-defendant's [sic] severed.

Supporting facts: It is well established that if it appears that a defendant is prejudiced by a joinder of offenses or defendants, the defense should motion to have the defendants severed and the attorney should have his clients tried separately.

Ground 15: Petitioner's trial attorney rendered ineffective assistance of counsel by failing to argue that the prosecution was shifting the burden of proof onto the defense.

Supporting facts: During summations, the prosecutor stated, "Now what possible reason in the world would his witness have to make up a story about defendant.["] Counsel should have objected because the defense has no burden of proof – the state does.

Ground 16: Petitioner's attorney rendered ineffective assistance of counsel by failing to request lesser included passion/provocation charge.

[no separate supporting facts stated]

Ground 17: Petitioner's attorney rendered ineffective assistance of counsel by failing to aggressively argue on behalf of his client during sentencing.

Supporting fact[s:] During Petitioner's sentencing hearing, instead of diligently and aggressively arguing for a lesser sentence, or raising mitigating factors, Mr. Zager pointed out that his client will probably commit another crime.

Ground 18: Under State v. Rue, 175 N.J. (2002) [sic] Petitioner argues that his trial and appellate attorneys were incompetent for the following reason:

Supporting fact[s]: Trial attorney failed to argue that his sixth amendment right to counsel was violated whe[n] law enforcement agents went to jail to speak to him.

Ground 19: Petitioner's trial attorney rendered ineffective assistance of counsel by failing to ask certain question on cross-examination.

Supporting facts: Petitioner attorney failed to address that clothes given to woman were not tested for gun powder.

Ground 20: Defendant was denied effective assistance of counsel, at his trial, and on direct appeal in violation of his constitutional rights under both the Sixth Amendment of the United States Constitution

6

and Article I, paragraph 10 of the New Jersey Constitution.

Supporting facts: When counsel failed to:

1) Call Steven L. Bennett, who would have testified that James Irwin and Ernesto barber were the persons responsible for the shooting of Rashan Roy

2) Separate the trials of Renato Santos and defendant, which would have allowed Santos to testify that he drove victims car.

3) Object to the prosecutor's closing remarks regarding the defense having an obligation to call Sergeant Isnardi as proof that Isnardi would not have corroborated Sergeant Hayes' testimony regarding Santos' statement.

4) Object to the prosecutor vouching for the truthfulness of Sergeant Hayes

Ground 21: Petitioner challengers his sentence of 30 years minimum and 30 years maximum as illegal because both his minimum and maximum as the lowest quantity and highest quantity cannot expire at the same time. In fact, due to the judge's application of NERA and its 85% provision, the max term would expire in 25½ years, a full 4½ before the minimum.

[no separate supporting facts stated]

Ground 22: The [Petitioner] is entitled to a full evidentiary hearing pursuant to R. 3:22-10 because the [Petitioner] has presented a prima facie case of [i]neffective assistance of counsel.[5]

[no separate supporting facts stated]

Ground 23: Defendant was denied effective assistance of Trial, Appellate and P.C.R. Counsel in violation of his fourteeth and sixth Amendment of the U.S. Constitution, and Article I paragraph 10 of the New Jersey Constitution.

Supporting facts:

A. Counsel never investigated independent eyewitness Ms. Barbara McKinnon who's [sic] statement would have impeached prosecutor's star witness Ernesto Barber.

B. Counsel failure to investigate Ms. Ann Cormartie after she was in contact with Steven Bennett after the shooting.

C. Counsel never cross-examine [sic] co-defendant Marvin Worthy and Renato Santos. Worthy at trail [sic], Santos at hearing.

D. Counsel never argue [sic] a third-party guilt [sic] when

_____

[5] Because the Court will deny the Petition, Petitioner's request for an evidentiary hearing is dismissed as moot.

counsel had essential evidence of other parties that committed said crime.

E. Counsel never ask [sic] for a mistrial when a police officer was allowed to read a statement form a co-defendant that was . . . [text cut off]

F. Counsel never objected to State's witness Ernesto Barber testifying in front of the jury in prison clothes and the prosecutor's references in closing arguments.

G. Counsel never investigate [sic] residing [sic] Judge having ex-parte communications with a juror over the phone.

Ground 24: Prosecutor misconduct in violation of the [Petitioner's fourteenth Amendment of the U.S. and N.J. Constitution.

Supporting facts: The prosecutor's witness made myriad statements to police officers and subsequently changed what they said at trial.

Ground 25: Fundamental injustice the [sic] [Petitioner] should have never been charged of the murder of Rashon Roy.

Supporting facts: Carrying out the killing of Roy by way of an order from the defendant. There is no evidence of a murder committed by the defendant.

Ground 26: [Petitioner's] 2nd P.C.R. claims should not be Proceedually [sic] barred under R. 3:22-4 or 3:22-5.

Supporting facts: Claims involved a violation of the [Petitioner's] 14th Amendment Constitutional right to a fair trial.

(Dkt. No. ¶ 12.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

28 U.S.C. § 2254 provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

8

. . .

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"[Section] 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[6] If a claim has been

---

[6] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Pinholster*, 563 U.S. 170, 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)); *see also Johnson v. Williams*, 133 S. Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.").

9

adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S. Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06.

Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams,* 529 U.S. at 410). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (citations and internal quotation marks omitted). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. 170, 181 (2011).

## B. Decision[7]

### 1. Ineffective Assistance of Counsel

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of

---

[7] For the ease of the reader, the Court will group together Petitioner's "grounds" as follows: ineffective assistance of counsel; evidentiary issues; sufficiency of the evidence; confrontation clause; illegal sentence; and PCR issues.

reasonableness." *Id.* at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Pinholster*, 563 U.S. at 189 (citing *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688).

In addition, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687) (internal citations omitted). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if

> the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**a. Prosecutor's Remarks During Opening Statement (Grounds Six, Seven, Eight, Nine)**

In Ground Six of the Petition, Petitioner argues his trial counsel was ineffective when he failed to object to prejudicial remarks made by the prosecutor during his opening statements. Specifically, the prosecutor allegedly said Petitioner is "kind of the head guy in this thing. Thought that the victim was trying to move him out and take over his business." In Ground Seven of the Petition, Petitioner alleges trial counsel failed to object to remarks by the prosecutor in opening statements about Petitioner's involvement in illegal drug trafficking. In Ground Eight, Petitioner contends trial counsel was ineffective when he failed to object to the prosecutor's statement that "Petitioner thought that the victim tried [sic] to kill him. Thereby, implying a false motive." Finally, in Ground Nine, Petitioner asserts counsel rendered ineffective assistance when he failed to object to prosecutor's claim that Petitioner had previously threatened the victim.

On PCR appeal, the Appellate Division rejected these grounds for relief and affirmed for essentially the reasons stated by the PCR court. *Maples*, 2009 WL 901843, at *3. The PCR court stated the following with regard to the claims about the prosecutor's comments:

> Defendant's contentions, therefore, do not amount to ineffective assistance of counsel in this court's view under the *Strictland*

13

[sic]/*Fritz* standard.   Defendant's arguments that trial counsel failed to object to prejudicial remarks by the prosecution in opening statements has already been adjudicated specifically by the Appellate Division and is procedurally barred under Rule 22-5.

Appellate Division specifically found there was no error in these statements. They specifically addressed in their decision that in fact counsel and the court and all of the witnesses were very careful not to make any reference to any type of criminal enterprise in any way, shape or form. And found that, quite frankly, that they went to great lengths to talk about a business venture without conjuring up any thoughts of untoward or illegal activity on the part of the defendant or his co-defendants in their, quote unquote, business venture.

The defendant seems to submit that that [sic], the colloquialisms used in the presence of the jury would conjure up nothing except the inescapable conclusion that the prosecutor was referring to a drug trafficking business or some other type of illegal activity. The Appellate Division specifically addressed those concerns and in that issue and ruled against the defendant in that regard. The matter is not cognizable here.

(PCR Tr., Resp't's Br., Ex. J, (Dkt. No. 16-12) at 9:16-10:25.)

Petitioner has not shown the state court's holding was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. With regard to Petitioner's claims that counsel failed to object to comments about his "business dealings" and "drug trafficking," the Appellate Division specifically held on direct appeal that the prosecutor and witnesses "scrupulously" refrained from mentioning Petitioner's involvement with drug dealing. *Maples*, No. A-6934-03T1. Since there was no mention of drug dealing by the prosecutor, trial counsel cannot be deemed ineffective for failing to object, as there was nothing to which he could have objected. Similarly, there was no prejudice to Petitioner when counsel failed to object to any reference to Petitioner being the "head guy" of

14

the business, since there had been no reference to the "business" being drug trafficking. Rather, Petitioner had only been identified as the head of the business in which the victim and he were involved. Certainly, being identified as the head of a business cannot be deemed prejudicial.

With regard to the prosecutor's alleged comments about Petitioner's state of mind and prior bad acts, the Appellate Division, on direct appeal, determined that discussion of the events leading up to the murder, specifically the threats allegedly made by Petitioner and possible motive, were permissible. *Maples*, No. A-6934-03T1 ("[T]estimony concerning earlier threats by defendant and co-defendants to kill the victim or to have him killed, and statements by defendant that would explain his motive for the killing, constituted both evidence of a continuing conspiracy to kill the victim and part of the *res gestae . . . .*"). In light of the fact that the Appellate Division found this evidence admissible, counsel cannot thereafter be deemed ineffective for failing to object to the prosecutor's comments. The state court properly rejected Petitioner's ineffective assistance of counsel claims on these grounds. Accordingly, habeas relief is denied.

**b. Trial Counsel's Remarks During Opening Statement (Grounds Ten and Eleven)**

In Ground Ten, Petitioner alleges trial counsel prejudiced Petitioner by describing him as a "fearful man" in his opening statements. In Ground Eleven, Petitioner alleges trial counsel prejudiced Petitioner by referring to the trial as a show. Petitioner raised these arguments in his first PCR petition, the PCR Court denied relief, and the Appellate Division affirmed the denial. (Dkt. No. 16-12, at 9:16-15:10); *Maples*, 2009 WL 901843, at *3-4.

As correctly argued by the State during the PCR proceedings, trial counsel's comments were in no way prejudicial, especially when taken in context. Counsel stated the following:

> What the prosecutor doesn't tell you and what the evidence will
> show is that on Friday night, after this alleged incident happened in

15

> Yonkers, the victim gets in the car with his halfbrother, with my client and they are going to go party. And not only do they do that on Friday night where they get stopped by the police, and you will hear about that, they do it on Saturday night. And the victim is so terrified of my client he loans him his car. After they drop off – they are dropped off at the hotel on Saturday night, he is so afraid to party on Friday and Saturday that he gets back in the car with him on Sunday morning because he is terrified that my guy is threatening to kill him. You are going to have to figure all this out.

(Resp't's Br., Ex. L, State's PCR Br. (Dkt. No. 19-15) at 11) (quoting Trial Tr. 5T, 37:24-38:13). It is clear counsel was being sarcastic and making a point when he implied the victim was terrified of the Petitioner since the victim had voluntarily chosen to socialize with Petitioner in the days following Petitioner's threat. The state court properly rejected this claim because counsel was acting objectively reasonably and Petitioner did not suffer any prejudice.

With regard to counsel's other allegedly objectionable comment, he stated the following during his opening:

> So I know you are going to have to listen to five lawyers. And that may be a fate worse than death. But there is [sic] five pretty good lawyers here. There is a great judge. And I'm going to ask you to sit back and enjoy the show, so to speak. It is a murder case. Someone died. It is not a show.

(Dkt. No. 19-15, at 12 (quoting Trial Tr. 5T, 39:6-39-12).) Taking the comment in context, counsel was acting reasonably. He used colloquial phrasing to appeal to the jury, but also made it clear he was not making light of the situation. Moreover, Petitioner suffered no prejudice because of this innocuous choice of words. Since Petitioner cannot meet either prong of *Strickland*, the state court appropriately denied relief.

**c. Plea Agreement (Ground Twelve)**

In Ground Twelve, Petitioner alleges trial counsel rendered ineffective assistance when he

16

failed to obtain a plea agreement. This argument was raised in Petitioner's PCR petition, where it was rejected by the state courts. Specifically, the Appellate Division stated, "There is no evidence, however, that the State was interested in plea negotiations or was at any time prepared to offer defendant a plea agreement." *Maples*, 2009 WL 901843, at *3. Petitioner has not shown that the state court's holding with regard to this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In fact, it is clear counsel acted reasonably and Petitioner did not suffer any prejudice as a result of counsel's failure to obtain a plea agreement because, as stated by the Appellate Division, there was absolutely no evidence the government had any interest in entering into a plea bargain with Petitioner.

**d. Arrest Warrant and Indictment (Ground Thirteen)**

In Ground Thirteen, Petitioner alleges trial counsel was ineffective for failing to argue the arrest warrant and indictment were defective. In support, Petitioner argues counsel "never motioned to have [Petitioner's] arrest warrant, and subsequent indictment, dismissed based on lack of probable cause." Petitioner raised this argument in his PCR petition, and the PCR court found it lacked merit:

> Defendant further claims counsel was ineffective for failing to argue that the indictment should have been dismissed because it lacked probable cause. Well, that's exactly what an indictment is. A Grand Jury has reviewed the evidence presented and in fact found there was probable cause to believe that a crime had been committed and the persons named committed the crime. That's what a true bill of indictment is. So, it is impossible by definition for a matter that's been indicted to lack probable cause because the sole purpose of the Grand Jury is to determine that probable cause exists.

17

> To require his counsel to make that argument is in fact not ineffective assistance of counsel. And in fact in this case trial counsel did move to dismiss the indictment. And that application was denied. Apparently, the defendant feels that it was ineffective assistance of counsel to lose that motion. That's not so.

(Dkt. No. 16-12, at 11:15-12:8.) As correctly articulated by the state court, Petitioner's ineffective assistance of counsel claim on this ground is without merit. Trial counsel did in fact move to have the indictment dismissed, the very act which Petitioner is now alleging counsel failed to do. (Resp't's Supp. Br., Ex. 2, Motion Tr. (Dkt. No. 23-2).) Since trial counsel did challenge the indictment, clearly Petitioner cannot meet the first prong of *Strickland*. The state court's holding with regard to this claim was not contrary to and did not involve an unreasonable application of clearly established Supreme Court precedent; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, habeas relief is denied.

### e.  Severing of Co-Defendants (Grounds Fourteen and Twenty (b))

In Ground Fourteen and subsection (b) of Ground Twenty, Petitioner alleges trial counsel rendered ineffective assistance when he failed to have the co-defendants severed. In support of this ground, Petitioner argues that "if it appears that a defendant is prejudiced by a joinder of offenses or defendants, the defense should motion to have the defendants severed." Petitioner raised this ground in his PCR petition and both the PCR court and Appellate Division rejected it as without merit.

> The defendant claims counsel was ineffective for failing to move to sever the defendants at trial.
>
> Again, trial counsel did raise this issue for severance or redaction after the *Miranda* hearing regarding the co-defendant's Santos' statement to police. And the trial court ruled that the statement

18

> would be admissible but would not permit any references implicating any of the co-defendants.   So only a redacted statement was admissible.
>
> So counsel in fact made the appropriate applications that the petitioner says he failed to make. He didn't like Judge Turnbach's ruling. But those issues have been adjudicated on direct appeal and are not cognizable here.

(Dkt. No. 16-12, at 9:16-15:10.) As correctly articulated by the state court, Petitioner's ineffective assistance of counsel claim on these grounds are without merit. Trial counsel did seek to have the co-defendants severed and though he was not successful, the co-defendant's statement was redacted so as to remove any reference to Petitioner. Since counsel sought the very relief Petitioner is claiming he failed to seek, clearly Petitioner cannot meet the first prong of *Strickland*. The state court's holding with regard to these claims was not contrary to and did not involve an unreasonable application of clearly established Supreme Court precedent; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, habeas relief is denied on these grounds.

**f. Prosecutor's Remarks During Closing Statement (Grounds Fifteen and Twenty (c), (d))**

In Ground Fifteen, Petitioner alleges trial counsel rendered ineffective assistance when he failed to argue the prosecutor was shifting the burden onto the defense. More precisely, Petitioner asserts that in his summation, the prosecutor questioned what motive a state witness would have to lie about Petitioner. In Grounds Twenty (c) and (d), Petitioner alleges counsel was ineffective when he failed to object to the prosecutor's statement during closing remarks that the defense had an obligation to call Sergeant Isnardi "as proof that Isnardi would not have corroborated Sergeant Hayes' testimony regarding Santos' statement" and when the prosecutor vouched for the truthfulness of Sergeant Hayes. Petitioner raised these claims in his first PCR petition, which were

19

summarily denied by the state courts.

Petitioner has failed to meet either prong of *Strickland*. As detailed by the government in the PCR appeal, during his summation, the prosecutor stated the following with regard to the testimony of state witness Hakeem Shabazz:

> Now what possible reason in the world would Hakeem Shabazz have to make that story up about Gregory Maples and Marvin Worthy and Renato Santos? You haven't heard one word, didn't hear one question on cross examination about what bone he has to pick with any of them. Not one.

(Dkt. No. 19-15, at 12 (quoting Trial Tr. 10T, 94:13-94:18)).

With regard to Sergeants Hayes and Isnard, the prosecutor stated the following:

> There have been a lot of other things that have been said here today. Mr. Kinarney just flat-out accused Sergeant Hayes of lying. Where is the tape? Well, he can't take a tape. Once Santos says, "I'm done talking," he can't say anything else to him. That's just the way it is.
>
> He says you have to take Hayes' word for it? Well, you heard Sergeant Hayes tell you yesterday or a couple of days ago -- excuse me -- that once Santos told him what happened, he brought Sergeant Isnardi back in the room, and Santos repeated it in front of Sergeant Isnardi.
>
> Now, do you think for one second that if Mr. Kinarney thought Sergeant Isnardi was going to say something different than Sergeant Hayes said, he wouldn't have brought him in here? And if Hayes was going to lie about it, since as Mr. Kinarney reported out this morning, his report wasn't filled out for about seven or eight days, why wouldn't he doctor-up the motive about who was getting run over in Philly?
>
> Because by then, he knows, at least from Barber and from both Shabazz brothers, that it was Maples who claimed he had a problem with the victim trying to kill him in Philly, not Santos having that problem. So if you are going to lie about it, why not implicate Maples through Santos, and make the stories all match up?

(Resp't's Supp. Br., Ex. 11, Trial Tr. 11T (Dkt. No. 23-11), at 106:5-107:7 (May 13, 2004).)

Certainly, these statements did not improperly shift the burden to the defense. Rather, the prosecutor was simply summarizing evidence supporting the testimony from the state's witnesses. Declining to object to such statements is how any objectively reasonable attorney would have acted. Moreover, Petitioner suffered no prejudice based on counsel's decision not to object. The jury was instructed and well aware that the state had the burden to prove Petitioner's guilt and these statements by the prosecutor during his closing argument did not in any way shift that burden. The state courts properly rejected Petitioner's claim on these grounds. Accordingly, habeas relief is denied.

**g.   Lesser Included Charges (Ground Sixteen)**

In Ground Sixteen, Petitioner alleges trial counsel rendered ineffective assistance when he failed to request lesser included charges of passion/provocation. Petitioner raised this issue in his PCR petition and both the PCR court and the Appellate Division denied relief. As the PCR Court explained:

> Lastly, the defendant argues that counsel was ineffective for failing to request a lesser included offense. And, again, while the record is in stark contrast to this argument, he still puts forth this, because he objected that the charges of lesser included offense were actually given.
>
> While discussing the charges counsel stated, and I quote, I reviewed the charge with my client. You have included lesser included offense charges of aggravated manslaughter and reckless murder under the count of murder. In nine out of 10 cases, judge, I would ask for the charge. And I think the judge would give it even if I didn't ask. My clients doesn't want those charges.   We are having a little dispute about that, but my client is of the opinion that it is, quite frankly, all or nothing.
>
> There is an indication that based upon the state's theory of this case this was a planned murder.   This wasn't passion provocation. This wasn't a reckless shooting to constitute aggravated manslaughter.

> This was a planned murder. A purposeful and knowing murder. And that's the state's case.
>
> Now he comes before this court and he says, his counsel was ineffective because he didn't request the lesser included charges including passion provocation manslaughter.
>
> Now, I've heard some pretty ridiculous arguments before, but this one rises to the level of absurdity to be considered by this court.

(Dkt. No. 16-12, at 12:23-14:1.) The Appellate Division found that "[r]egarding the failure to seek a lesser-included offense charge, the trial record reflected that it was defendant's choice to forego those charges, apparently against counsel's advice." *Maples*, 2009 WL 901843, at *3-4.

As articulated by the state courts, the record establishes that trial counsel wanted to seek lesser included charges, but Petitioner himself refused to allow it. Petitioner cannot now argue his counsel was ineffective for failing to request such charges. Any objectively reasonable attorney would have acted similarly. Petitioner cannot meet the first prong of the *Strickland* test, therefore, the state courts properly denied relief on this ground.

**h.   Sentencing (Ground Seventeen)**

In Ground Seventeen, Petitioner alleges trial counsel rendered ineffective assistance when he failed to aggressively argue on behalf of his client during sentencing. To support this claim, Petitioner asserts that, during his sentencing hearing, counsel failed to "diligently and aggressively" argue for a lesser sentence; failed to raise mitigating factors; and pointed out his client will "probably commit another crime." Petitioner raised this issue in his PCR petition and it was summarily denied by the state courts.

Even if the state courts had accepted Petitioner's assertions and found counsel acted unreasonably during sentencing, Petitioner cannot meet the prejudice prong of *Strickland*. He

22

was found guilty of first-degree murder pursuant to N.J.S.A. 2C:11-3, which carries with it a mandatory minimum sentence of 30 years, with 30 years of parole ineligibility. *See* N.J.S.A. § 2C:11-3(b)(1) ("[A] person convicted of murder shall be sentenced . . . by the court to a term of 30 years, during which the person shall not be eligible for parole, or be sentenced to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole.") Since Petitioner received a sentence of 30 years with 30 years of parole ineligibility, the minimum sentence he could receive for a murder conviction, he clearly suffered no prejudice as a result of trial counsel's alleged errors during sentencing.

### i.  Interaction with Law Enforcement (Ground Eighteen)

In Ground Eighteen, Petitioner alleges trial and appellate counsel rendered ineffective assistance pursuant to "*State v. Rue*, 175 N.J. (2002)" when they failed to argue Petitioner's rights were violated when law enforcement officials spoke to him at the jail. Petitioner raised this claim in his PCR petition and it was denied by the state courts. The Law Division stated:

> Lastly, the defendant argues that Appellate counsel failed to argue a sixth Amendment right counsel was violated when law enforcement agents went to speak to him while he was incarcerated. The statement is unsupported by any of the evidence and fails to address how his rights were violated, or how this in any way affected or caused him prejudice in the trial. The bear [sic] assertion without more does not rise to a level of ineffective assistance of counsel.

(Dkt. No. 16-12, at 9:16-15:10.) In its opinion upholding the lower court, the Appellate Division stated, "No evidence of record supported defendant's claim that his Sixth Amendment right to counsel was violated when law enforcement agents spoke to him while incarcerated; moreover, as the PCR court noted, defendant 'fail[ed] to address how his rights were violated, or how this in any way affected or caused him prejudice in the trial.'" *Maples*, 2009 WL 901843, at *3-4.

Petitioner has not shown that the state court's holding with regard to this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The state courts properly examined this argument and determined Petitioner has not established counsel acted objectively unreasonably in failing to raise this issue on appeal; nor did he establish he suffered any prejudice whatsoever as a result of counsel's failure to raise this issue. Since he cannot meet either prong of *Strickland*, the state courts properly denied him relief on this ground and this Court will deny habeas relief.

**j.  Inadequate Cross-Examination (Ground Nineteen)**

Finally, in Ground Nineteen, Petitioner alleges trial counsel rendered ineffective assistance when he failed to ask certain questions on cross-examination; namely, he failed to "address that clothes given to woman were not tested for gun powder." In his Reply, Petitioner clarified his argument, stating that "the clothes given to Ms. Ann Cromartie from [Steven] Bennett[8] for a ride to Irwin's house was [sic] not tested fun [sic] gun powder. There was [sic] bullets at the scene that didn't match the two guns given to Officer's [sic] by Barber so those clothes should have been tested from Bennett to see if he had a gun." (Reply 6.)

Petitioner cannot meet either prong of *Strickland*. It is unclear what questions Petitioner felt counsel should have asked during cross-examination and to what witness the questions should have been directed. Moreover, it is mere speculation on the part of Petitioner that the clothes contained any gun powder residue and even if it did, how that would prove Bennett had a gun.

---

[8] As discussed more fully below, Steven Bennett is an individual who was present during the commission of the crime.

Finally, Petitioner has not asserted any prejudice he suffered as a result of the failure to cross-examine an unspecified witness on this issue. Because Petitioner has failed to meet either prong of the *Strickland* test, habeas relief will be denied on this ground.

### k. Failure to Call Witness (Ground 20(a))

In subsection (a) of Ground Twenty of his Petition, Petitioner argues his trial counsel rendered ineffective assistance when he failed to call Steven L. Bennett as a witness. In his Reply, Petitioner argues Mr. Bennett would have testified that James Irwin and Ernesto Barber, two others who were present during the incident, were responsible for the shooting of the victim. Petitioner raised this issue in his first PCR petition and the state courts denied relief. Specifically, the Appellate Division stated, "Defendant's contention that a witness named Steven L. Bennett would have testified that two other individuals were 'responsible for the shooting of [the victim],' is not supported in the record; therefore, the claim that counsel was ineffective for failing to call Bennett to testify at trial is without merit." *Maples*, 2009 WL 901843, at *3-4.

Here, Petitioner has not shown the state court's holding with regard to this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The state court properly determined Petitioner had not met either prong of the *Strickland* test. There was nothing in the record to indicate Steven Bennett would have provided such exculpatory testimony, and such unsupported statements by Petitioner were insufficient to establish that counsel was ineffective.[9] Habeas relief will be denied

---

[9] In his Reply, Petitioner does provide a copy of a report from the Ocean County Prosecutors' Office containing notes from an interview with Steven Bennett conducted on November 24, 2003. (Pet'r's Reply (Dkt. No. 17-1), at Da34-36.) During that interview, Mr. Bennett indicated that, while he was running from the scene of the crime, he also saw the victim running with him, as

on this ground.

## 2. Evidentiary Issues (Grounds One and Two)

In the first ground of the Petition, Petitioner argues the trial court improperly allowed testimony regarding a prior incident between the victim and Petitioner. At trial, evidence was introduced which established that Petitioner "was also involved in an incident during the early morning hours of April 26, in which another co-defendant held a gun to [the victim's] head and only desisted from shooting him after defendant ordered him not to." *Maples*, No. A-6934-03T1. In the second ground of the Petition, Petitioner argues the trial court improperly allowed evidence that indirectly indicated the crime was drug-related. Both grounds were raised on direct appeal and denied by the Appellate Division:

> We conclude, as did the trial judge, that the evidence concerning the events from April 25 through April 28, 2002, prior to the murder, did not constitute other crimes evidence for purposes of N.J.R.E. 404(b), and hence a Rule 104 hearing was not required pursuant to *State v. Cofield*, 127 N.J. 328, 338 (1992). Testimony concerning earlier threats by defendant and co-defendants to kill the victim or to have him killed, and statements by defendant that would explain his motive for the killing, constituted both evidence of a continuing conspiracy to kill the victim and part of the res gestae. *See State v. Long*, 173 N.J. 138, 154 (2002). Accordingly, we reject defendant's contentions, for the reasons stated in the cogent oral opinion of Judge Turnbach, set forth on the record on May 4, 2004.
>
> We also reject defendant's contention that the State improperly placed other crimes evidence before the jury by referring, implicitly,

---

well as Mr. Irwin, another individual who was present. However, Mr. Bennett specifically stated that he did not see who shot the victim. Additionally, Mr. Bennett had previously told police a different story about the events of that night, which included a statement that he was behind a building with a woman when the shots were fired and he did not see anything. Based on the conflicting stories given by Mr. Bennett, there is nothing to indicate what his testimony would have been, had counsel called him to the stand. Moreover, since both statements by Mr. Bennett included the fact that he did not see who had actually shot the victim, as well as the fact that it was not even Petitioner himself who shot the victim, there is no indication that, but for the failure to call Mr. Bennett as a witness, the jury would have had reasonable doubt respecting guilt.

> to defendant's drug dealing. We find, to the contrary, that the prosecutor and all of the State's witnesses scrupulously refrained from any mention of defendant's alleged involvement in illegal drug sales. Any references to the defendant's enterprise were carefully couched in terms of defendant's "business" or even more obliquely in terms of "what [defendant's] doing," without describing the nature of the business.

*Id.*

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) ("[T]he Due Process Clause guarantees fundamental elements of fairness in a criminal trial . . . ."); *accord Estelle*, 502 U.S. at 70. For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Both of Grounds One and Two in the Petition allege violations of state evidentiary rules. Therefore, to obtain federal habeas relief, Petitioner must show that these violations deprived him of due process. He cannot make such a showing. The state court properly considered the previous incident between Petitioner and the victim and determined that it did not constitute other crimes evidence but instead evidence of a continuing conspiracy. Petitioner has not shown that such a determination was an error, never mind that it was an error that was so pervasive as to have denied him a fundamentally fair trial. Petitioner's claim regarding the "indirect evidence" that the crime

27

involved drugs likewise fails. As properly stated by the Appellate Division, the state trial court was very careful to ensure that there was no mention of drugs during testimony. Given the fact that drugs were not discussed, Petitioner certainly cannot establish that there was an error which denied him a fundamentally fair trial. Habeas relief will be denied on both grounds.

### 3. Sufficiency of the Evidence (Grounds Three and Twenty-Five)

In Ground Three of the Petition, Petitioner argues that the trial court erred when it denied his motion for an acquittal because there was no evidence linking Petitioner to the crime. Ground Twenty-Five of the Petition raises a nearly identical claim. Petitioner raised this issue in his direct appeal and it was summarily denied by the Appellate Division.

A sufficiency of the evidence claim is governed by *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324; *accord McDaniel v. Brown*, 558 U.S. 120, 121 (2010); *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013). *Jackson* requires:

> a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*McDaniel*, 558 U.S. at 133 (internal citations and quotations omitted); *see also House v. Bell*, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the

verdict.").

The Supreme Court emphasized that "the standard . . . does not permit a court to make its own subjective determination of guilt or innocence." *Jackson*, 443 U.S. at 320, n.13. "'[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously," *McDaniel*, 558 U.S. at 131 (quoting *Lockhart v. Nelson*, 488 U.S. 33, 42 (1988)), and "under *Jackson*, the assessment of credibility of witnesses is generally beyond the scope of review," *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty . . . ." *Kamienski v. Hendricks*, 332 F. App'x 740, 747 (3d Cir. 2009).

Petitioner first raised this issue in his motion for acquittal at the close of the state's case at trial. The court denied the motion, stating the following:

> All right-Well, with regard to this matter, as counsel's aware, the court accepts the evidence presented by the State, views it in its most favorable light, and gives the State the benefit of reasonable inferences that can be drawn there from.
>
> During the course of the trial here, to the best of my recollection, I've heard testimony of the Shabazz brothers, who were brothers of the victim, with regard to a course of conduct involving the defendants. Worthy, Santos and Maples and the victim, starting three days prior to the murder of the victim.
>
> The course of conduct was rather violent in nature, in that guns were possessed by the defendants, two of the defendants, and threats were exchanged, and there was an indication that there was some concern that one of the defendants thought the victim tried to do him physical harm in Philadelphia, and threats were exchanged and guns were displayed starting three days prior to April 28th. And that's the best of my recollection.

29

I have heard testimony that on April 28th the defendants Worthy and Maples appeared at the Highpoint condominium complex in Lakewood early in the morning; they spoke with Mr. Barber, a State's witness, as well as the accused Irwin in this case, allegedly-- that's the testimony -- and there was some discuss, even at that point by the defendant with Worthy about the events three days earlier, and the fact that, you know, violence could be done to the victim in this case.

Worthy and Maples left and went – I think it was Worthy who returned in the Acura.   They both left in the Jeep.   Worthy returned in the Acura. There was testimony that Worthy then, along with several others including Mr. Barber, went and retrieved a handgun at Winteringham Village in Toms River, and returned to the Highpoint area.

And there was testimony that, shortly thereafter, the green Jeep was again in the parking lot of the Highpoint complex, and in the green Jeep was the defendant Worthy with the defendant Santos. The defendant Maples entered the Jeep, and there was testimony that the shots were fired and that the victim came out of the Jeep and started to run, not very well, apparently, having been shot, and that the defendant Santos then pursued him and kept shooting at him until he fell dead.

Once again, it's not up to the court to pass upon the credibility of the evidence, but merely to note the presence of evidence and that it is sufficient in nature to justify submission of the case to the jury, along with all the ballistics information and other items that have been admitted into evidence.

So, all of the motions are denied.

(Trial Tr. 10T, Resp't's Supp. Answer, Ex. 10 (Dkt. No. 23-10) at 50:10-52:12.) The Appellate

Division summarily affirmed.

Looking at the evidence in the light most favorable to the prosecution, the trial court

properly found that there was a credibility issue regarding the testimony of Mr. Barber which the

jury needed to evaluate. It was not up to the court to make that credibility determination; rather the

court only needed to find the existence of sufficient evidence for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt. Having made that finding, the court properly denied Petitioner's motion for acquittal. Thus, the New Jersey court's adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of *Jackson* and its progeny, and Petitioner is not entitled to habeas relief on Grounds Three and Twenty-Five.

**4. Confrontation Clause (Ground Four)**

Ground Four of the Petition raises a claim under the Confrontation Clause. Petitioner alleges that his rights were violated when the trial court limited his ability to question a state witness at trial. During the cross-examination of state witness Detective Scott Frey, a forensic crime scene processor, Petitioner's attorney attempted to ask whether he was "aware that on April 28, 2002, the Sunday of the shooting, that Mr. Maples' sister's boyfriend lived at the High Point apartment building?" (Resp't's Supp. Answer, Ex. 6, *State v. Maples*, No. 02-09-1247 (N.J. Super. Ct. Law Div. 2007), Trial Tr. 6T (Dkt. No. 23-7), at l14:25.) The prosecutor objected on the basis of relevancy and assuming facts not in evidence. *Id.* The trial court sustained the objection and the following transpired at sidebar:

> THE COURT: First of all, I sustained the objection, because if he is going to respond, it would necessarily be a hearsay response, unless he lived there too. If you want to ask him that, whether he lived there too, if he knows anybody else that lives there you can get a foundation that way. But other than that, its going to be hearsay.
>
> MR. ZAGER: Well, I would think, Judge - -
>
> MR HEISLER: Judge, I'm pretty sure the detective has no idea. And Mr. Zager putting out this fact of, Are you aware of whether somebody lives in this . . . he's trying to tell the jury that's a fact.
>
> THE COURT: Sure. That's something that will have to come in his case.

MR. HEISLER: Yeah.

MR. ZAGER: I think I'm entitled to ask the question knowing that there may be somebody on the witness stand who is going to testify he's aware of it.

MR. HEISLER: What relevance does it make whether he's aware of it or not?

MR. ZAGER: I don't care he's - - he's going to argue to the jury Mr. Maples' van was there, and this whole thing was set up. And I'm certainly allowed to question him- -

THE COURT: You could produce evidence, "Oh contraire," as they say; right?

MR. ZAGER: I should be allowed to do it through his witnesses, too.

THE COURT: Yes, hearsay- -

MR. ZAGER: Judge - -

THE COURT: - - unless he talked to Gregory Maples, and Gregory Maples said something.

MR.ZAGER: If he's - -

THE COURT: Even then it might be self-serving.

MR. ZAGER: I'll note my objection.

(*Id.* at 115:14-116:25.) Petitioner raised this issue on direct appeal, but it was summarily denied by the Appellate Division.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U .S. Const. Amend. VI. The right is secured for defendants in state as well as federal criminal proceedings by the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965). The protections of the Confrontation Clause necessarily include the

right to cross-examination of a witness. *See Smith v. Illinois*, 390 U.S. 129, 131 (1968). The scope of such cross-examination is, generally, that broad and basic information cannot be excluded; for instance, where credibility is at issue, the trial court cannot ordinarily prohibit defendant from inquiring into a witness's identity and residence. *See id.* Such questions are "not only an appropriate preliminary to the cross-examination of the witness, but . . . [are] an essential step in identifying the witness with his environment, to which cross-examination may always be directed." *Id.* at 132 (quoting *Alford v. United States*, 282 U.S. 687, 693 (1931)). In other words, the defendant must be able "to make a record from which to argue [that the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.*

However, the right to cross-examination is not without limits, as "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Thus, the scope of cross-examination regarding a particular line of inquiry falls necessarily "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate]." *Alford*, 282 U.S. at 694. "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Petitioner only raises this ground based on a violation of state evidence rules. However, the violation of a right created by state evidentiary law is not itself cognizable as a basis for federal habeas relief. *See Estelle*, 502 U.S. at 67–68. Moreover, even if the Court were to presume

Petitioner intended to raise a Confrontation Clause violation, he is still not entitled to habeas relief. The limitation of Detective Frey's cross-examination regarding an issue completely unrelated to his testimony, which also assumed facts not in evidence, was well within the discretion of the trial court. Further, the state court ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Accordingly, this ground for habeas relief is denied.

## 5. Illegal Sentence (Ground Twenty-One)

In Ground Twenty-One of the Petition, "Petitioner challenges his sentence of 30 years minimum and 30 years maximum as illegal because both his minimum and maximum as the lowest quantity and highest quantity cannot expire at the same times. In fact, due to the judge's application of NERA and its 85% provision, the max term would expire in 25 ½ years, a full 4 ½ before the minimum."

Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the eighth amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) (holding that under federal law, "the court may impose . . . whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); *see also Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987). Here, Petitioner was convicted of first degree murder and received the lowest possible sentence for said crime under New Jersey law. *See* N.J.S.A. § 2C:11-3(b)(1) ("Murder is a crime of the first degree but a person convicted of murder shall be sentenced . . . by the court to a term of 30 years, during which the person shall not be

eligible for parole, or be sentenced to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole.") Certainly, this sentence does not violate his federal constitutional rights. Habeas relief is denied.

## 6.   PCR Issues (Grounds Twenty-Three, Twenty-Six)

In Ground Twenty-Three of the Petition, Petitioner argues that PCR counsel [10] was ineffective for failing to raise the following errors committed by trial counsel:

> A: Counsel never investigated independent eyewitness Ms. Barbara McKinnon who's [sic] statement would have impeached prosecutor's star witness Ernesto Barber.

> B. Counsel [sic] failure to investigate Ms. Ann Cromartie after she was in contact with Steven Bennett after the shooting.

> C. Counsel never cross-examine co-defendant Marvin Worthy and Renato Santos.   Worthy at trial [sic], Santos at hearing.

> D. Counsel never argue [sic] a third party guilt when counsel had essential evidence of other parties that committed said crime.

> E. Counsel never ask [sic] for a mistrial when a police officer was allowed to read a statement from a co-defendant that was [cut off]

> F. Counsel never objected to State's witness Ernesto Barber testifying in front of the jury in prison clothes and the prosecutor's references in closing arguments.

> G. Counsel never investigate [sic] residing [sic] judge having ex-parte communication with a juror over the phone.

(Pet. ¶ 12(23).)   In Ground Twenty-Five, Petitioner challenges the PCR court's determination that his second PCR petition was procedurally barred under state court rules.

---

[10] In the Petition, it was not clear as to whether this claim was brought against trial, appellate or PCR counsel. Petitioner lists all three, but then underlines only PCR counsel. However, in his Reply, Petitioner clarifies, stating that "PCR counsel was ineffective for failing to raise that counsel failed to . . . . " (Dkt. No. 17, at 7.)

As set forth in this Opinion, Petitioner is entitled to federal habeas relief for violations of the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). Claims based on state law error are not cognizable. *See Estelle*, 502 U.S. at 67–69. Furthermore, "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[H]abeas proceedings are not the appropriate forum for Lambert to pursue claims of error at the PCRA proceeding."); 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Therefore, Petitioner's claim that his PCR counsel was ineffective for failing to advance his claims regarding trial counsel's performance and his claim that the PCR court erred in its application of New Jersey court rules are not properly before this Court as grounds for habeas relief. Accordingly, these claims are denied. *See Davis v. New Jersey*, No. 12–5748, 2014 WL 2615657, at *17 (D.N.J. June 12, 2014); *Vreeland v. Warren*, No. 11–5239, 2013 WL 1867043, at *4 n.2 (D.N.J. May 2, 2013).

**7.  Prosecutorial Misconduct (Ground Twenty-Four)**

In Ground Twenty-Four, Petitioner raises a claim for "prosecutor misconduct in violation of the defendant's fourteeth [sic] Amendment of the U.S. and N.J. constitution." (Pet. ¶ 12(24).) In support, he states only that the "prosecutor's witnesses made myriad statements to police

officers and subsequently changed what they said at trial." *Id.* In his Reply, Petitioner provided

more information:

> Halim Shabazz testifies to an incident in Yonkers N.Y. how
> Petitioner and Co-Defendants pulled guns on him and the victim and
> threatened them, well he told Officer Vincent Frulio. The Officer
> testified to what he told him, that he was sleep and the victim told
> him the next day (Exhibit P) portion of Indictment Hearing. And the
> Prosecutor that was prosecuting the case was the prosecutor at that
> Indictment Hearing. Ernesto Barber even admitted to lying to police
> and jury. This was very improper misconduct for a representative of
> the Law to engage in. The Prosecutors job is to prosecute guilty
> person's in violation of the Law, not Innocent person's that are
> suppose to be protected by the Law. No one said they'd seen
> Petitioner get into an Acura and leave the area but, State's Witness
> Barber, No Corroborating Witness. But there is a few witnesses that
> saw Barber come from where the victim lay shot and left in his truck
> (Exhibit H). The Prosecutor knows these facts. the Prosecutor used
> false information and knew the information to be false. Therefore
> committing Misconduct in violation of the Defendant's rights that
> are guaranteed under the U.S. Constitution.

(Reply 8.) Petitioner raised this issue in his second PCR appeal, which the Appellate Division

denied as procedurally barred. *Maples*, 2011 WL 2749682, at *2.

Federal habeas review is limited to determining whether the prosecutor's conduct "so

infected the trial with unfairness as to make the resulting conviction a denial of due process."

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In making this determination, courts must

examine the entire proceedings of the case. *Id.* Courts must consider the prosecutor's conduct, the

effect of curative instructions, and the strength of the evidence. *Moore v. Morton*, 255 F.3d 95,

107 (3d Cir. 2001) (citing *Darden v. Wainwright*, 477 U.S. 168, 183 (1986); *Donnelly*, 416 U.S.

at 643.)

Though the exact nature of Petitioner's claim is not clear, it appears he is alleging

misconduct on the part of the prosecutors because they used witnesses who had made inconsistent

37

prior statements to police. However, the decision to use said witnesses certainly did not "infect the trial with unfairness." In fact, defense counsel used the prior inconsistent statements of the state's witnesses to impeach their trial testimony, thereby potentially undermining their credibility in the eyes of the jury. (Resp't's Supp. Answer, Exs. 6, 8, Trial Tr. 6T, 8T.) Simply stated, none of Petitioner's allegations in anyway infected the trial with unfairness and the resulting conviction did not violate his due process rights. Habeas relief is denied on this ground.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV.   CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.

**Dated: December 6, 2016**

                                   ___*/s/Brian R. Martinotti*___
                                   **BRIAN R. MARTINOTTI, U.S.D.J.**
                                   **UNITED STATES DISTRICT JUDGE**